1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHONG SOOK LIM,                          Case No.  1:21-cv-01734-DAD-BAM

12                  Plaintiff,                 ORDER GRANTING APPLICATION TO
                                               PROCEED IN FORMA PAUPERIS
13          v.
                                               (Docs. 2, 4)
14   LISA A. MILLER, Ph.D., et al.,
                                               SCREENING ORDER GRANTING
15                  Defendants.                PLAINTIFF LEAVE TO AMEND

16                                             (Doc. 1)

17

18          Plaintiff Chong Sook Lim ("Plaintiff"), proceeding pro se, initiated this civil rights action

19   pursuant to 42 U.S.C. § 1983 against Lisa A. Miller, Ph.D. and Does 1-53 on December 7, 2021.

20   (Doc. 1.)

21          **I.      Application to Proceed in Forma Pauperis**

22          Concurrent with her complaint, Plaintiff filed an application to proceed in forma pauperis

23   without prepaying fees or costs pursuant to Title 28 of the United States Code section 1915(a).

24   (Doc. 2.)  The application was not signed.  Accordingly, on March 3, 2022, the Court directed

25   Plaintiff to file a completed application to proceed in forma pauperis.  (Doc. 3.)  Plaintiff

26   submitted a signed application to proceed in forma pauperis on March 30, 2022.  (Doc. 4.)

27          Plaintiff has made the showing required by section 1915(a), and accordingly, the request

28   to proceed in forma pauperis is GRANTED.  28 U.S.C. § 1915(a).

                                                  1

1      **II.**      **Screening Requirement and Standard**

2          The Court screens complaints brought by persons proceeding in pro se and in forma

3 pauperis. 28 U.S.C. § 1915(e)(2). Plaintiff's complaint, or any portion thereof, is subject to

4 dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be

5 granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28

6 U.S.C. § 1915(e)(2)(B)(ii).

7          A complaint must contain "a short and plain statement of the claim showing that the

8 pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

9 required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

10 conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

11 *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as

12 true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*,

13 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

14          To survive screening, Plaintiff's claims must be facially plausible, which requires

15 sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

16 for the misconduct alleged. *Iqbal,* 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*

17 *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully

18 is not sufficient, and mere consistency with liability falls short of satisfying the plausibility

19 standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

20      **III.**      **Summary of Plaintiff's Allegations**

21          Plaintiff brings this section 1983 action against Defendant Lisa A. Miller, Ph.D., a

22 licensed clinical psychologist. Plaintiff's complaint relates to state court child custody

23 proceedings on December 18, 2019, and October 14, 2021, involving Plaintiff and her minor

24 daughter, Yerin Lim. (Doc. 1, Compl. at ¶¶ 1, 7, 8.). According to the complaint, Defendant

25 provided a report and appeared as a witness in contested family court proceedings, presumptively

26 as a child custody evaluator. (*Id.* at ¶¶ 7, 8, 33, 35, 38.) Plaintiff alleges that "Defendant falsely

27 diagnosed Plaintiff, who is an adult and the mother of a child, as a result of three conjoint

28 therapies as a child psychologist." (*Id.* at ¶ 4.) Defendant is sued based on allegations that "she

2

neglected [her] responsibility to report to the CPS, reported false information about the Plaintiff and the child to the Family Court several times, committed perjury in family court hearings, and violated the law of confidentiality to be observed as a child psychologist." (*Id.*)

On December 18, 2019, the family court rejected Plaintiff's request for change of custody based on Defendant's allegedly false report that Plaintiff had Munchausen by Proxy Syndrome ("MBPS").  The court ordered supervised visits and ordered Plaintiff to attend individual counseling because of the allegedly false MBPS diagnosis.  Plaintiff contends that without Defendant's report, "the court had no reason to dismiss the Plaintiff's custody change and unsupervise [sic] visits on December 18, 2019. (*Id.* at ¶ 7.)

At some unknown point, Plaintiff requested that the family court dismiss Defendant's reports as invalid and inaccurate, but that request was dismissed.  Plaintiff asserts that according to Defendant's report, "Plaintiff could neither have custody of her child nor have any visitation rights." (*Id.* at ¶ 14.)  Plaintiff asserts that Defendant is not eligible for custody evaluation with her license and her recommendations as a custody evaluator should be dismissed.  (*Id.*)  Plaintiff further asserts that Defendant, a child psychologist, is unqualified to do adult psychiatric evaluations and analyses.  Defendant's alleged "misdiagnosis and misreporting cause the Plaintiff, who was a preschool teacher, to lose her job for a living and lose her full custody of her child." (*Id.* at ¶ 15.)

Defendant also reportedly "emailed Plaintiff's eldest daughter, spitting out all the information about the Plaintiff and the patient." (*Id.* at ¶ 17.)  Defendant allegedly stated, "The typical outcome of Munchausen by Proxy is death.  I do not want that to happen to your sister.  I am not the only doctor professional that has had the same assessment of the situation." (*Id.*)

Plaintiff is concerned that Defendant is still consulting with Plaintiff's child.  Defendant "showed a trial of retaliation against the Plaintiff and a great effort to forcibly separate the child from the child's mother.  Defendant is building a new relationship by coaching and managing the child from Plaintiff and her family.  Defendant is alienating the child, the child's mother, her sister and her whole family." (*Id.* at ¶ 23.)  Plaintiff and her family reported Defendant to the California Board of Psychologists in January 2020.

3

On December 19, 2019, Defendant reported to the family court that certain of Plaintiff's actions were part of Munchausen Syndrome.  Plaintiff claims that Defendant's "irresponsible and unconsidered false diagnosis, misunderstanding and distortion . . . destroyed the life of an innocent mother and her family."  (*Id.* at ¶ 30.)

Plaintiff further alleges that after Defendant confirmed with Plaintiff's individual therapist that Plaintiff was still attending therapy, Defendant continued to claim and report to the court that Plaintiff was not complying with the court order because Plaintiff had discontinued her therapy.  Plaintiff avers that "[t]hese false statements and delusions about the Plaintiff, the Defendant concluded, would increasingly negatively affect repeated contact between the Plaintiff and the child."  (*Id.* at ¶ 32.)

Plaintiff asserts that Defendant violated the California Board of Psychology policy by sharing child-patient and parent information with a third party without prior consent or permission.  Defendant allegedly disclosed all information about Plaintiff and Plaintiff's child to other patients and their parents, and Plaintiff's friends and eldest daughter.  (*Id.* at ¶ 34.)  Plaintiff claims that Defendant provided unfiltered information about Plaintiff's child to a third party.  (*Id.* 53.)

Plaintiff claims that Defendant must no longer see the child as patient, that Defendant is jealous of the bond between mother and child and is trying to turn attention to herself by breaking several laws.  Plaintiff avers that Defendant is not competent to carry on the work of a Child Custody Evaluator and that Defendant has created speculation about the Plaintiff that is unreasonable and far from reality.  As an example of the purported speculation, Plaintiff points to Defendant's statement that she has "grave concerns that nonprofessionals such as church members or family friends would not be able to stop [Plaintiff] from engaging in inappropriate and potentially dangers behaviors, which may include her taking the child and refusing to return her to her custodial parent."  (*Id.* at ¶ 38.)  Plaintiff claims that Defendant does not know how to distinguish between her fantasies/shows and reality.  Plaintiff also claims that she has not had any contact with Defendant since 2019 and Defendant does not have a right to evaluate Plaintiff or the case.  Plaintiff contends that what Defendant has done to Plaintiff and her child is an act of racism

toward an Asian mother and the intent to deprive Plaintiff of her maternal rights is a human rights violation.  (*Id.* at ¶ 43.)

On October 14, 2021, the court again dismissed Plaintiff's request for custody change and unsupervised visits.  Defendant was summoned as a witness in the contested hearing.  Defendant "testified that Plaintiff was not complying with the court order by lying that Plaintiff was not attending the individual therapy ordered by the court."  (*Id.* at ¶ 8.)  The court did not confirm this information with Plaintiff or the report of Plaintiff's individual therapist.  Plaintiff alleges:

> Defendant falsely stated that the Plaintiff continued to harass the child's biological father and his extended family with inappropriate conduct without substantiation, and that the Plaintiff entered the Defendant's office at number 15 or 20 times and stated differently "many many many times" without an appointment and falsely stated that the Plaintiff had requested a false report that the child had been abused by the child's father.

(*Id.* at ¶ 33.)  Plaintiff claims that Defendant provided other "completely unsubstantiated false testimony" at the contested hearing.  (*Id.* at ¶ 48.)

Plaintiff alleges that Defendant violated various California statutes, including the California Family Code, the California Penal Code and the California Civil Code.  Plaintiff also claims that Defendant violated 18 U.S.C. §§ 1621 and 1623.   As relief, Plaintiff seeks monetary damages and injunctive relief.

## IV.   Discussion

Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 8, fails to state a cognizable claim upon which relief may be granted, and seeks monetary relief against a defendant who is immune from such relief.  As Plaintiff is proceeding in pro se, and in an abundance of caution, the Court will allow Plaintiff an opportunity to amend her complaint to the extent she can do so in good faith.  To assist Plaintiff, the Court provides the relevant pleading and legal standards.

### A.  Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–557.

Plaintiff's complaint is not a short and plain statement of her claims.  Plaintiff's narrative is rambling, confusing, and lacks chronological order.  It also contains extraneous statements and information, making it difficult to separate the relevant factual allegations from the irrelevant ones.  It is not the type of complaint contemplated by Rule 8.  *See Murguia v. Langdon*, No. 1:19-cv-00942-DAD-BAM, 2020 WL 3542310, at *12 (E.D. Cal. June 30, 2020) (dismissing complaint with leave to amend where complaint failed to comply with Rule 8 and was "mostly narrative ramblings and storytelling").  If Plaintiff files an amended complaint, it should be a short and plain statement of her claims and must be limited only to those factual allegations related to her claims which identify what happened, when it happened and who was involved. Fed. R. Civ. P. 8.

### B.  Child Custody Claims

Plaintiff presents her claims as a civil rights action against Defendant Miller.  However, to the extent Plaintiff's purpose in bringing this action is to seek modification of child custody orders or modification of the terms and conditions of visitation, she may not do so.  The Court lacks jurisdiction over claims concerning child custody issues because they are exclusively matters of state law. *See Ankenbrandt v. Richards*, 504 U.S. 689, 702-704 (1992) (holding that the domestic relations exception to federal subject matter jurisdiction "divests the federal courts of power to issue divorce, alimony and child custody decrees."); *see also Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir.1983) (stating that "federal courts have uniformly held that they should not adjudicate cases involving domestic relations, including 'the custody of minors and *a fortiori*, right of visitation.' For that matter, the whole subject of domestic relations and particularly child custody problems is generally considered a state law matter"). "Even when a federal question is presented, federal courts decline to hear disputes which would deeply involve

them in adjudicating domestic matters." *Thompson v. Thompson*, 798 F.2d 1547, 1558 (9th Cir.1986).

Further, to the extent Plaintiff is challenging the orders of the state court regarding custody or visitation premised on Defendant Miller's reports or testimony, she may not do so. This Court lacks subject matter jurisdiction to review the final determinations of state court dependency proceedings. *See*, *e.g.*, *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir.1986) ("The United States District Court ... has no authority to review the final determinations of a state court in judicial proceedings."). Under the *Rooker-Feldman* doctrine, a federal district court does not have subject-matter jurisdiction to hear an appeal from the judgment of a state court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005); *see also Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923).   Therefore, Plaintiff's claims relating to child custody and supervised visitation, which presumably arise from state court orders, would be barred by the *Rooker-Feldman* doctrine. *See Walton v. Hopper*, No. 2:22-cv-00453 JAM AC PS, 2022 WL 837268, at *4 (E.D. Cal. Mar. 21, 2022), ("Child custody and parental rights are quintessentially state law matters that are generally outside the purview of the federal court."), *report and recommendation adopted*, No. 2:22-cv-0453 JAM AC PS, 2022 WL 1506096 (E.D. Cal. May 12, 2022).

### C.  Quasi-Judicial Immunity

"It has long been established that judges are absolutely immune from liability for acts 'done in the exercise of their judicial functions." *Miller v. Davis*, 521 F.3d 1142, 1145 (9th Cir. 2008) (quotation omitted).   The absolute immunity granted to judges has been extended to other public officials "who perform activities that are 'functionally comparable' to those of judges." *Id.*   (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)). District courts in the Ninth Circuit, including this district, have found that quasi-judicial immunity applies to defendants performing functions similar to those that Defendant Miller was alleged to be performing as a child custody evaluator. *See*, *e.g.*, *Thomas v. Ventura Cty. Superior Ct.*, No. CV 17-8659-MWF (ASx), 2018 WL 6016916, at *5 (C.D. Cal. Aug. 16, 2018) (finding "child custody recommending counselor"

1  entitled to quasi-judicial immunity); *Karkanen v. Fam. Ct. Servs. of Contra Costa Cty.*, No. 17-

2  CV-00999-HSG, 2017 WL 2730227, at *3 (N.D. Cal. June 26, 2017) (finding child custody

3  evaluator entitled to absolute immunity); *Stone v. Freitas*, No. CV 14-1267-LJO, 2014 WL

4  6774192, at *4 (E.D. Cal. Nov. 10, 2014) ("child-custody evaluators" serve in quasi-judicial

5  roles, providing recommendations to the courts regarding child-custody).  This immunity applies

6  even if Defendant Miller's action were made in error, in excess of her authority, or she acted in

7  bad faith, so long as they were within the scope of her jurisdiction.  *See Stone*, 2017 WL

8  2730227, at *5 (concluding that even if child-custody evaluator acted in error or in bad faith, her

9  actions were shielded from liability by quasi-judicial immunity so long as those actions were

10  within the scope of her jurisdiction).

11  **D.  Claims Under Title 18 of the United States Code**

12  Plaintiff alleges violations of Title 18, sections 1621 and 1623.  (Compl. at ¶ 62.)  "[T]he

13  fact that a federal statute has been violated and some person harmed does not automatically give

14  rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442

15  U.S. 560, 568 (1979) (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 688 (1979)).

16  Rather, the Court is to consider if Congress intended to create the private right of action in the

17  statute, looking first to the language of the statute. *Id.* "Civil causes of action ... do not generally

18  lie under the criminal statutes contained in Title 18 of the United States Code.*" Del Elmer;*

19  *Zachay v. Metzger*, 967 F. Supp. 398, 403 (S.D. Cal. 1997).

20  Here, the sections cited by Plaintiff under Title 18 provide for fines and incarceration for

21  criminal offenses.  There is no language in these sections that would imply a cause of action

22  exists to allow Plaintiff to seek a remedy for these criminal statutes in this action.

23  **E.  California Penal Code Violations**

24  Plaintiff cites a variety of California Penal Code sections.  Generally, the California Penal

25  Code does not permit a private right of action. *See Thomas v. Restaurant*, Case No. 1:15-cv-

26  01113-DAD-SKO, 2015 WL 9583029, at *2 (E.D. Cal. Sept. 31, 2015). Plaintiff has not

27  demonstrated that any of the cited Penal Code sections authorize a private cause of action.

28  ///

### F.  State Law Claims

To the extent Plaintiff is attempting to assert state claims, the Court declines to screen them in the absence of a cognizable claim for relief under federal law.  Under 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," except as provided in subsections (b) and (c). The Supreme Court has stated that "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. 28 U.S.C. § 1367.

### V.    Conclusion and Order

Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 8, fails to state a cognizable claim upon which relief may be granted, and seeks monetary damages from a defendant that is immune from such relief.  As Plaintiff is proceeding pro se, the Court will grant Plaintiff an opportunity to amend her complaint to cure these deficiencies to the extent she is able to do so in good faith.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*, 556 U.S. at 678-79.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).  Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012).  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order or file a notice of voluntary dismissal; and

3. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated: **June 16, 2022**    /s/ *Barbara A. McAuliffe*
           UNITED STATES MAGISTRATE JUDGE

10